IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

**ENTERED**
**06/10/2014**

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| CURTIS COLTON BAY, | ) | CASE NO. 13-80149-G3-13 |
| | ) | |
| Debtor, | ) | |
| | ) | |

MEMORANDUM OPINION

Introduction

Individuals who file bankruptcy cases often need specialized legal advice, both in preparing the documents they must file, and in the conduct of the bankruptcy case. Over many years, the functions involved with providing legal advice, and preparing bankruptcy petitions and documents, have sometimes become separated. Lawyers often provide legal advice directly to clients. Other lawyers enlist the aid of paralegals to communicate the lawyers' advice to clients and obtain relevant information. The Bankruptcy Code additionally recognizes the concept of "bankruptcy petition preparers" who are non-lawyers who do not provide legal advice, but prepare paperwork for a fee. Additionally, lawyers often engage outside persons to assist with marketing of legal services to clients.

In the instant case, a debtor encountered what he believed to be an integrated organization, marketing legal services online, and providing those services through a full-

service law firm.  In fact, as the evidence adduced at the hearings on the instant supplemental order to show cause and on two previous orders to show cause demonstrates, Debtor encountered a number of persons, all of whom were working on Debtor's case, but none of whom were organized or operating as an integrated law firm, or in fact operating at the direction of Debtor's counsel of record.[1]  Several of these individuals had never met one another.

On a previous order to show cause, the court has sanctioned Debtor's attorney of record during the instant case, Glynda Stowers.  The instant supplemental order to show cause was directed to what appeared to be an entity called Texas BK Firm, and four individuals who appeared to be associated with that entity, Kelly James Robbennolt, Richard Dwyer, Christopher Stephens, and Mason Schau.

The instant case was ultimately dismissed.[2]  This court retained jurisdiction to act on its Supplemental Order to Show

---

[1]The first Order to Show Cause (Docket No. 7) was directed to Debtor and Stowers, indicating that he failed to complete a prepetition briefing required under Section 109(h)(1) of the Bankruptcy Code before filing the case.  The second Order to Show Cause (Docket No. 13), which was entered after Debtor appeared and testified at the hearing on the first Order to Show Cause, was directed to Stowers, in light of her failure to appear, and in light of issues raised by Debtor's testimony at the hearing on the first Order to Show Cause.

[2]Debtor subsequently filed a second case, using the services of other counsel.  Debtor's plan in the second case was confirmed.

Cause.

In certain regards, the operations of what was called
Texas BK Firm, and the various persons involved with it, violated
the law.  The following are the Findings of Fact and Conclusions
of Law of the court.  A separate conforming Judgment will be
entered.  To the extent any of the Findings of Fact are
considered Conclusions of Law, they are adopted as such.  To the
extent any of the Conclusions of Law are considered Findings of
Fact, they are adopted as such.

Curtis Colton Bay ("Debtor") filed a voluntary petition
under Chapter 13 of the Bankruptcy Code in the instant case, his
first such case, on April 11, 2013.

### Stowers' Relationship With Texas BK Firm

The sequence of events that led to the filing of the
petition in the instant case, with Stowers as Debtor's attorney
of record, began on September 14, 2011.  Stowers, an attorney
licensed in Texas since 1993, had in 2007 opened her own law
office.  Stowers testified that she had very little work
available during 2011.  She testified that she posted her resume
to a website, guru.com.  She testified that guru.com allows an
employer to post a temporary contract, and individuals can then
bid on the contract to obtain the work.  On September 14, 2011,
Stowers bid on a listing seeking a "virtual administrative
assistant" for a California law firm.  She made a bid to do the

work for $12 per hour.  (Trustee's Exhibit 62).

On September 16, 2011, Kelly James Robbennolt ("Robbennolt")[3] responded to Stowers' bid, requesting that Stowers telephone Robbennolt.  (Trustee's Exhibit 62).

Robbennolt is a convicted felon, convicted of forgery in Utah state court during 2011.  The Utah state court found that he acted with purpose to defraud.  (Trustee's Exhibit 59).

Stowers testified that Robbennolt boasted that he was a very successful real estate investor, had been involved in major transactions, and now was involved in a nationwide business venture specializing in bankruptcy law.

Stowers testified that Robbennolt hired her, trained her, and put her to work inputting information into Form B22 for cases to be filed in California.[4]  She testified that Robbennolt provided her a template for inputting the data, with questions to ask the clients.  She testified that when she spoke with

---

[3]Natasha Jones Robbennolt, the wife of Kelly James Robbennolt, also testified at the hearing on the instant Supplemental Order to Show Cause.  For clarity, she is identified as "Jones," and Kelly James Robbennolt is identified as "Robbennolt," in this Memorandum Opinion.

[4]Form B22 encompasses the means test submitted by debtors in individual bankruptcy cases.  Form B22A, filed in Chapter 7 cases, provides the statement of current monthly income and means test calculation regarding eligibility for Chapter 7.  Form B22B, filed in Chapter 11 cases, provides the statement of current monthly income for Chapter 11 debtors.  Form B22C, filed in Chapter 13 cases, provides the statement of current monthly income and calculation of commitment period and disposable income, to be used in the preparation of Chapter 13 plans.

4

Robbennolt, she got the impression that the California law firm which had placed the advertisement for a "virtual administrative assistant" was Robbennolt's own firm.

Stowers testified that she later became aware that the attorneys who were listed as attorney of record in the cases filed in California were Richard Dwyer and Joseph Collier. She testified that the attorneys' whose names were on the petitions did not attend creditors' meetings. Instead, they sent "appearance attorneys." Stowers testified that she believed at that time that Robbennolt, Dwyer, and Collier were all part of one law firm. Robbennolt testified that he is not an attorney.

During the time Stowers worked on cases filed with Dwyer listed as the attorney of record, and during the time when Stowers worked on cases with Stowers listed as the attorney of record, she also maintained her own law firm in Texas.

According to a stipulation entered into during March, 2013, by Dwyer and the Acting United States Trustee for the Northern District of California, Dwyer began filing bankruptcy cases on May 31, 2011. Dwyer stipulated that he was assisted in some of those cases by the "California Bankruptcy Group," non-lawyer employees of which met with debtors by phone or email, advised the debtors about the bankruptcy process, and assisted with the bankruptcy cases, without Dwyer ever meeting with the clients. Fees were auto-debited from the debtors' bank accounts,

postpetition, in violation of the automatic stay, and paid into an account under the name "Natasha Jones." (Trustee's Exhibit 52).

Robbennolt testified that the "California Bankruptcy Group" was a website, set up by Robbennolt on Dwyer's behalf.

Robbennolt testified that the persons who worked on cases on which Dwyer was the attorney of record were Robbennolt, Stephens, Schau, and Stowers, as well as Melissa Carlillo, and Connie Kirkpatric. Robbennolt testified that he lives in Utah. He testified that Stephens and Carlillo live in Utah. He testified that Kirkpatric lives in southern California. He testified that Schau lives in Nebraska.

Robbennolt testified that, in 2012, Stowers contacted him, and wanted to set up a situation in which Robbennolt's group would assist Stowers in filing bankruptcy cases in Texas. He testified that, in the fall of 2012, he set up a website, texasbkfirm.com, at Stowers' direction. He testified that Stowers approved all the content for the website, and that Stowers was listed as the owner of the domain name.

Stowers testified that she initially believed the Texas BK Firm was owned by Dwyer. She testified that she had never met Dwyer at that time, though she had been working on cases in which Dwyer was the attorney of record for approximately one year, and that all her interactions with Dwyer were through Robbennolt.

6

Both Stowers and Robbennolt testified that there was no written contract covering the relationship between Stowers and Texas BK Firm.

Stowers testified that her arrangement with Texas BK Firm involved Texas BK Firm referring bankruptcy cases to her. She testified that a condition of her working with Texas BK Firm was that she provide Robbennolt with her electronic case filing ("ECF") login and password information.  Texas BK Firm would collect the money from clients, and would pay her $185 in each case in which she appeared at the meeting of creditors.  If Stowers did not appear at the meeting of creditors, Texas BK Firm would engage an appearance attorney, and Stowers would receive $125 for acting as the client's attorney of record.  Stowers testified that she was also paid $50 per month to maintain a larger post office box to accept the mail generated by the additional cases.  She testified that she began receiving referred cases in November, 2012.

Stowers testified that she never employed Robbennolt, Jones, Stephens, Schau, Carlillo or Kirkpatric, or any of the other personnel at Texas BK Firm who worked on her cases.

Robbennolt testified that the financial arrangement between Stowers and Texas BK Firm was that Stowers was to receive the profits from the cases filed by Texas BK Firm.  He testified that he was to conduct marketing operations at Stowers'

7

direction, and that he made a loan to Stowers to cover the costs of marketing.  This testimony is not credible.

An email exchange between Robbennolt and Stowers during January, 2013, sets forth a system of payments consistent with Stowers' testimony, and inconsistent with Robbennolt's testimony. (Trustee's Exhibit 55, at p. 71-72).

Stowers testified that Robbennolt did not place an emphasis on the particular legal situations of the clients. Rather, his emphasis was on sales.  Robbennolt testified that he viewed a sale as closed when a prospective client made payment, and agreed to have Texas BK Firm obtain a credit report.  He testified that, for every ten closed sales, only one or two cases ended up being filed.

Stowers began attempts to terminate her relationship with Texas BK Firm on April 19, 2013.  At first, she notified Robbennolt, Schau, Kirkpatric, and an individual named Rebecca, by email dated April 19, 2013, that she could no longer be involved in the filing of new Chapter 13 cases.  (Trustee's Exhibit 55, at p. 22).

On April 26, 2013, Stowers sent email to Robbennolt revoking the authority she had previously granted to Texas BK Firm to sign her name to documents without Stowers' review of the documents.  She also notified Robbennolt that she would not accept any new cases from Texas BK Firm as of May 31, 2013.

8

(Trustee's Exhibit 55, at p. 14).

On April 28, 2013, Stowers sent email to eleven individuals who had worked on cases for Texas BK Firm, requesting that no additional cases be filed under her name, and that her name and contact information be removed from all marketing materials, website information, and written materials. (Trustee's Exhibit 55, at p. 11).  Stowers testified that none of the persons to whom the email was addressed (including Robbennolt, Schau, Stephens, and Kirkpatric) were her employees. She testified that she had come to know their names and email addresses, and wanted to include as many of them as she could.

Stowers testified that the persons from Texas BK Firm who worked on her cases had email addresses with the domain name listed as "firmsupportstaff.com."  Robbennolt testified that he set up the email accounts on that domain.

During the time when Stowers was accepting referrals of cases from Texas BK Firm, a total of 51 cases were filed in which Stowers was listed as the attorney of record.  (Trustee's Exhibit 2).

Robbennolt testified that, after Stowers no longer accepted cases, Texas BK Firm filed four additional cases, with Betsy Thomas listed as the attorney of record.

## Conduct of Cases by Texas BK Firm

Robbennolt testified that several of the same individuals who had worked on cases in which Dwyer was the attorney of record worked on cases in which Stowers was the attorney of record.  He testified that a prospective client would become aware of the Texas BK Firm by visiting the website, would call a telephone number listed on the website, and listen to a recording.  He testified that Kirkpatric would call back the prospective client, and give them Stowers' contact information to allow the clients to research Stowers' background.  He testified that, if a prospective client was interested in moving forward with a bankruptcy case, the prospective client would talk to Stephens.  Robbennolt testified that Stephens would use a template provided by Stowers to input information into the computer system, and then put a draft petition into a Dropbox folder for Stowers to review.[5]  Stowers would review the petition, and telephone the client to discuss bankruptcy options and issues.  Then, a woman in the Philippines named Jasmine Jamell would file the petition, using Stowers' electronic case filing ("ECF") information.

Stowers testified that she first saw the cases after they were filed.  She testified that there were problems with the

_____

[5]Dropbox is a commercial provider of electronic storage space for data.

documents filed in cases in which she was listed as the attorney of record, that arose before she ever saw the cases.  She acknowledges that, once the cases were filed, she was listed as the attorney of record, and therefore was responsible for the cases.

Stowers testified that she did not give Robbennolt a template.  She testified that Robbennolt provided the templates.

Robbennolt takes the position that there was no organization called Texas BK Firm.  He testified that he undertook a number of actions at the direction of Stowers.  These actions include:  setting up the texasbkfirm.com website; hiring Kirkpatric, Stephens, Schau, Jasmine Jamell, and "Jennifer" as independent contractors; managing the flow of funds into the Natasha Jones account from clients and disbursing those funds to the independent contractors (including Stowers); hiring appearance attorneys; providing Stowers' ECF information to Jasmine Jamell; and managing communications with the independent contractors.  As set forth below, the court finds that Texas BK Firm was an assumed name of Robbennolt, and that Robbennolt, not Stowers, was the person in charge.

<u>Flow of Funds</u>

Robbennolt testified that the "Natasha Jones" account identified in the stipulation between the United States Trustee and Dwyer is the bank account at Zions Bank owned by his wife,

11

Natasha Jones.

Robbennolt testified that funds from cases in which Dwyer was the attorney of record in California, and cases in which Stowers was the attorney of record in Texas, were deposited into the Natasha Jones account.  Robbennolt testified that funds from bankruptcy cases filed in Washington, Oklahoma, Georgia, Alaska, Ohio, Michigan, Wyoming, Nebraska, and Idaho also were deposited into the Natasha Jones account.  Robbennolt testified that funds additionally went into the Natasha Jones account from Robbennolt's consulting work, both for website development and real estate development.

Jones testified that she set up the account, at Robbennolt's direction, prior to the time she became married to Robbennolt, because Robbennolt had credit issues that interfered with his ability to maintain a bank account.

Robbennolt testified that the Internal Revenue Service ("IRS") has a judgment against him, for an amount in excess of $700,000.  He testified that the IRS had frozen his bank account.

Jones testified that, although she was the only signatory on the account, Robbennolt managed the account for her. Robbennolt testified that funds were paid from the account at his direction.

Robbennolt testified that there were deposits of $1,209,854 into the Natasha Jones account during the period of

12

time when the California Bankruptcy Group and Texas BK Firm were active.

Robbennolt testified that the Natasha Jones account was used to make payments to, _inter alia_, attorneys Stowers, Dwyer, Stephens, Richard McGuire, Carl Lux, and Betsy Thomas, non-attorneys Kirkpatric, Schau, Jasmine Jamell, and Warren Jamell, as well as other non-attorneys whose last names he does not recall:  Mark, Jeff, and three women named Jennifer.  He testified that the payments were made at his direction.

Robbennolt testified that he made the payments to individuals from the Natasha Jones account at the direction of the attorneys on whose cases they worked.  That testimony is not credible.

Robbennolt testified that some of the funds in the Natasha Jones account were used to pay his and his wife's personal expenses.

Jones testified that she has accounts in other banks, and she manages those accounts on her own.

<u>Injunctions</u>

On March 2, 2012, the United States Bankruptcy Court for the Eastern District of Oklahoma entered an order enjoining, _inter alia_, Robbennolt and Schau from engaging in any conduct which violates 11 U.S.C. § 110, et seq. in all federal jurisdictions.  (Trustee's Exhibit 50).

13

On March 28, 2013, the United States Bankruptcy Court for the Northern District of California approved a stipulation under which Dwyer, and each of his agents, servants, employees, associates, and all persons and entities in active concert or participation with any of them were enjoined from filing bankruptcy cases in the Northern District of California for a six month period. (Trustee's Exhibit 52).

On October 7, 2013, the United States Bankruptcy Court for the Central District of California approved a stipulation under which Dwyer, and each of his agents, servants, employees, associates, and all persons and entities in active concert or participation with any of them were enjoined from filing bankruptcy cases in the Central District of California for a two year period.  (Trustee's Exhibit 51).

Robbennolt acknowledges that he was an agent, associate, and person acting in active concert with Dwyer, with respect to the injunction entered on March 28, 2013.

### Debtor's Interaction With Texas BK Firm and Stowers

Debtor testified that, when he first contacted Texas BK Firm, he believed that they were a law firm.  He testified that he turned to Texas BK Firm in order to cut down the costs of filing the case.  He testified that he was told Texas BK Firm would handle everything in preparation for filing the case, and that Stowers would be there to answer questions, and to be with

14

him in court.

Stowers testified, at the hearing held June 10, 2013 on the first Order to Show Cause, that Debtor initially paid $400 to Texas BK Firm by giving his debit card information to Jasmine Jamell.  Stowers testified that Debtor agreed to make additional payments over the course of several weeks.  Debtor testified at that hearing that he had made no additional payment.  Debtor testified, at the hearing on the instant Supplemental Order to Show Cause, that Texas BK Firm has refunded all the money he paid to Texas BK Firm.

Debtor testified, at the hearing held May 14, 2013 on the first Order to Show Cause, that he had never met Stowers.  He testified that he had spoken with Stowers by telephone, and had spoken by phone with assistants he believed to be in Stowers' office.

Debtor testified, at the June 10, 2013 hearing, that he did not personally sign the petition in the instant case.  He testified that he gave authorization over the phone for his electronic signature to be applied to the petition.

Stowers testified, at the hearing held June 10, 2013, that she did not sign the petition in the instant case.

The petition in the instant case was filed on April 11, 2013.  Attached to the petition is a disclosure of compensation. The disclosure of compensation purports to disclose that Stowers

15

agreed to receive $899 for her services in the instant case, and in fact received $899 prepetition.  Stowers testified that she did not receive $899.  Stowers' testimony on this issue was credible.  The court finds that the disclosure of compensation filed in the instant case was materially false.

Debtor testified, at the hearing held June 10, 2013, that he had spoken by telephone with individuals named Rebecca, Elizabeth, Mason, and Kelly.

The court finds that Debtor spoke with Mason Schau and Kelly Robbennolt.  Robbennolt testified that "Elizabeth" is a bankruptcy petition preparer residing on the east coast of the United States, who also responded to Robbennolt's listing on guru.com.  Robbennolt testified that "Rebecca" also was located on the east coast.

This court previously found, in its Memorandum Opinion on the second Order to Show Cause, that Debtor received emails from Robbennolt, Schau, Jasmine, and an individual named Melissa. (Docket No. 23).

Robbennolt testified that Melissa lives and works in Utah.  He testified that she worked on California cases in which Dwyer was the attorney of record, as well as Texas cases in which Stowers was the attorney of record.

Debtor testified that he received legal advice regarding his exemptions from several different people from Texas

16

BK Firm, each of whom gave him conflicting information.  He testified that at least one of the individuals from Texas BK Firm gave him advice to omit the listing of some property from his schedules.

Debtor testified, at the May 14, 2013 hearing, that he was notified of the requirement to take a credit counseling briefing on the morning of April 12, 2013, after the petition in the instant case had been filed.  He testified that he obtained the briefing (which Section 109(h)(1) of the Bankruptcy Code requires be obtained in the 180 day period <u>preceding</u> the date of filing of the petition) one day after the petition was filed in the instant case.

Debtor testified, at the May 14, 2013 hearing, that he was advised by Kirkpatric that the instant case would be dismissed, in light of his failure to obtain the prepetition briefing.[6]

<u>Credibility of Witnesses</u>

Debtor testified at all three show cause hearings.  His testimony regarding his interactions with Robbennolt, the various persons at the Texas BK Firm, and his own impressions regarding his duties as a Chapter 13 debtor, was credible.  The court gives

---

[6]The instant case ultimately was dismissed, by order entered on September 11, 2013, on grounds of Debtor's failure to file a Chapter 13 plan.  (Docket No. 62).  In the dismissal order, this court retained jurisdiction to consider the instant Supplemental Order to Show Cause.

Debtor's testimony substantial weight.

Stowers testified at the second and third show cause hearings.  Her testimony regarding her own understanding of her arrangement with Texas BK Firm is supported by documentary evidence, including Stowers' invoices to Texas BK Firm, which support the veracity of Stowers' testimony regarding the relationship between Stowers and Texas BK Firm.  The court finds the testimony of Stowers on this issue to be credible.  The court gives Stowers' testimony substantial weight.

Robbennolt testified at the hearing on the instant order to show cause.  His testimony appears on its face to be internally consistent.  However, there is a self-serving pattern of selective recall and selective disclosure in Robbennolt's testimony that weakens his credibility.[7]  The court gives Robbennolt's testimony lesser weight, particularly on the issue of the arrangement between Texas BK Firm and Stowers.

Mason Schau testified at the hearing on the instant order to show cause.  His testimony was very brief.  He testified

---

[7]This pattern is also observed in Robbennolt's email communications with Stowers and others.  In seeking to hire Stowers, purportedly on behalf of Dwyer, and although Robbennolt had created domains for Dwyer, Robbennolt used the email address "kellyusbkgroup@gmail.com," with his name displayed as "Kelly BK Support."  In later communications, he used the email address "kelly@firmsupportstaff.com."  Robbennolt created and managed all of these internet domains.  This suggests that Robbennolt wanted to present different images to different persons with whom he interacted.

that he has no knowledge regarding the operations of Texas BK
Firm.  The court gives Schau's testimony little weight.

<u>The Instant Order to Show Cause</u>

The instant Supplemental Order to Show Cause directed
Robbennolt, Dwyer, Stephens, and Schau to appear and show cause
why they should not be sanctioned pursuant to Sections 105, 110,
526, 527, and 528 of the Bankruptcy Code, Bankruptcy Rule 9011,
and the court's inherent power; and why the court should not
refer the matters raised in the order to the United States
Attorney for the Southern District of Texas and the state bars of
Texas, California, and Utah, for appropriate action by those
agencies.

Debtor testified that he has missed five days of work
in order to attend this court's show cause hearings.  He
testified that he has lost $2,600 in income, as a result.

<u>Bankruptcy Petition Preparer Issues</u>

Section 110[8] provides in pertinent part:

(a) In this section -

(1) "bankruptcy petition preparer" means a person,
other than an attorney for the debtor or an
employee of such attorney under the direct
supervision of such attorney, who prepares for
compensation a document for filing; and

(2) "document for filing" means a petition or any
other document prepared for filing by a debtor in

_____

[8]All references to section numbers refer to sections of the
Bankruptcy Code, 11 U.S.C. § 101, et seq.

19

a United States bankruptcy court or a United
States district court in connection with a case
under this title.

(b)(1) A bankruptcy petition preparer who prepares a
document for filing shall sign the document and print
on the document the preparer's name and address.  If a
bankruptcy petition preparer is not an individual, then
an officer, principal, responsible person, or partner
of the bankruptcy petition preparer shall be required
to -

    (A) sign the document for filing; and
    (B) print on the document the name and address of
    that officer, principal, responsible person, or
    partner.


(2)(A) Before preparing any document for filing or
accepting any fees from a debtor, the bankruptcy
petition preparer shall provide to the debtor a written
notice which shall be on an official form prescribed by
the Judicial Conference of the United States in
accordance with rule 9009 of the Federal Rules of
Bankruptcy Procedure.

(B) The notice under subparagraph (A) -

    (i) shall inform the debtor in simple language
    that a bankruptcy petition preparer is not an
    attorney and may not practice law or give legal
    advice;
    (ii) may contain a description of examples of
    legal advice that a bankruptcy petition preparer
    is not authorized to give, in addition to any
    advice that the preparer may not give by reason of
    subsection (e)(2); and
    (iii) shall -

        (I) be signed by the debtor and, under
        penalty of perjury, by the bankruptcy
        petition preparer; and
        (II) be filed with any document for filing.


(c)(1) A bankruptcy petition preparer who prepares a
document for filing shall place on the document, after
the preparer's signature, an identifying number that

identifies individuals who prepared the document.

(2)(A) Subject to subparagraph (B), for purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.

(B) If a bankruptcy petition preparer is not an individual, the identifying number of the bankruptcy petition preparer shall be the Social Security account number of the officer, principal, responsible person, or partner of the bankruptcy petition preparer.

* * *

(e)(1) A bankruptcy petition preparer shall not execute any document on behalf of a debtor.

(2)(A) A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B).
(B) The legal advice referred to in subparagraph (A) includes advising the debtor -
    (i) whether -
        (I) to file a petition under this title; or
        (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;
    (ii) whether the debtor's debts will be discharged in a case under this title;
    (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title;
    (iv) concerning -
        (I) the tax consequences of a case brought under this title; or
        (II) the dischargeability of tax claims;
    (v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt;
    (vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or
    (vii) concerning bankruptcy procedures and rights.

* * *

21

(h)(2) A declaration under penalty of perjury by the
bankruptcy petition preparer shall be filed together
with the petition, disclosing any fee received from or
on behalf of the debtor within 12 months immediately
prior to the filing of the case, and any unpaid fee
charged to the debtor.  If rules or guidelines setting
a maximum fee for services have been promulgated or
prescribed under paragraph (1), the declaration under
this paragraph shall include a certification that the
bankruptcy petition preparer complied with the
notification requirement under paragraph (1).

(3)(A) The court shall disallow and order the immediate
turnover to the bankruptcy trustee any fee referred to
in paragraph (2) found to be in excess of the value of
any services –
        (i) rendered by the bankruptcy petition preparer
        during the 12-month period immediately preceding
        the date of the filing of the petition; or
        (ii) found to be in violation of any rule or
        guideline promulgated or prescribed under
        paragraph (1).
(B) All fees charged by a bankruptcy petition preparer
may be forfeited in any case in which the bankruptcy
petition preparer fails to comply with this subsection
or subsection (b), (c), (d), (e), (f), or (g).
(C) An individual may exempt any funds recovered under
this paragraph under section 522(b).

(4) The debtor, the trustee, a creditor, the United
States trustee (or the bankruptcy administrator, if
any) or the court, on the initiative of the court, may
file a motion for an order under paragraph (3).

(5) A bankruptcy petition preparer shall be fined not
more than $500 for each failure to comply with a court
order to turn over funds within 30 days of service of
such order.

(i)(1) If a bankruptcy petition preparer violates this
section or commits any act that the court finds to be
fraudulent, unfair, or deceptive, on the motion of the
debtor, trustee, United States trustee (or the
bankruptcy administrator, if any), and after notice and
a hearing, the court shall order the bankruptcy
petition preparer to pay to the debtor –
        (A) the debtor's actual damages;

22

```
          (B) the greater of -
               (i) $2,000; or
               (ii) twice the amount paid by the debtor to
               the bankruptcy petition preparer for the
               preparer's services; and
          (C) reasonable attorneys' fees and costs in moving
          for damages under this subsection.
     (2) If the trustee or creditor moves for damages on
     behalf of the debtor under this subsection, the
     bankruptcy petition preparer shall be ordered to pay
     the movant the additional amount of $1,000 plus
     reasonable attorneys' fees and costs incurred.

     (j)(1) A debtor for whom a bankruptcy petition preparer
     has prepared a document for filing, the trustee, a
     creditor, or the United States trustee in the district
     in which the bankruptcy petition preparer resides, has
     conducted business, or the United States trustee in any
     other district in which the debtor resides may bring a
     civil action to enjoin a bankruptcy petition preparer
     from engaging in any conduct in violation of this
     section or from further acting as a bankruptcy petition
     preparer.

     (2)(A) In an action under paragraph (1), if the court
     finds that -
          (i) a bankruptcy petition preparer has -
               (I) engaged in conduct in violation of this
               section or of any provision of this title;
               (II) misrepresented the preparer's experience
               or education as a bankruptcy petition
               preparer; or
               (III) engaged in any other fraudulent,
               unfair, or deceptive conduct; and
          (ii) injunctive relief is appropriate to prevent
          the recurrence of such conduct, the court may
          enjoin the bankruptcy petition preparer from
          engaging in such conduct.
     (B) If the court finds that a bankruptcy petition
     preparer has continually engaged in conduct described
     in subclause (I), (II), or (III) of clause (i) and that
     an injunction prohibiting such conduct would not be
     sufficient to prevent such person's interference with
     the proper administration of this title, has not paid a
     penalty imposed under this section, or failed to
     disgorge all fees ordered by the court the court may
     enjoin the person from acting as a bankruptcy petition
     preparer.
```

(3) The court, as part of its contempt power, may enjoin a bankruptcy petition preparer that has failed to comply with a previous order issued under this section.  The injunction under this paragraph may be issued on the motion of the court, the trustee, or the United States trustee (or the bankruptcy administrator, if any).
(4) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorneys' fees and costs of the action, to be paid by the bankruptcy petition preparer.

(k) Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law.

(l)(1) A bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure.
(2) The court shall triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer -
     (A) advised the debtor to exclude assets or income that should have been included on applicable schedules;
     (B) advised the debtor to use a false Social Security account number;
     (C) failed to inform the debtor that the debtor was filing for relief under this title; or
     (D) prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer.
(3) A debtor, trustee, creditor, or United States trustee (or the bankruptcy administrator, if any) may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of this section.
(4)(A) Fines imposed under this subsection in judicial districts served by United States trustees shall be paid to the United States trustees, who shall deposit an amount equal to such fines in the United States Trustee Fund.
(B) Fines imposed under this subsection in judicial districts served by bankruptcy administrators shall be deposited as offsetting receipts to the fund established under section 1931 of title 28, and shall

24

      remain available until expended to reimburse any
appropriation for the amount paid out of such
appropriation for expenses of the operation and
maintenance of the courts of the United States.

11 U.S.C. § 110.

      The bankruptcy court may raise issues regarding
bankruptcy petition preparers under Section 110 of the Bankruptcy
Code sua sponte.  In re Doser, 292 B.R. 652 (D. Idaho 2003); In
re Graves, 279 B.R. 266 (9th Cir. BAP 2002); In re Moore, 290
B.R. 287 (Bankr. E.D.N.C. 2003).

      In the instant case, employees or independent
contractors working for Texas BK Firm prepared the petition,
schedules, and statement of financial affairs.  They were not
prepared under the direct supervision of Stowers or any other
attorney.  The court concludes that Texas BK Firm acted as a
bankruptcy petition preparer in the instant case.

      The documents prepared for filing in the instant case
by Texas BK Firm were not signed by the bankruptcy petition
preparer, in violation of Section 110(b)(1).  No written notice
was provided to Debtor that Texas BK Firm was acting as a
bankruptcy petition preparer, in violation of Section
110(b)(2)(A).  The documents did not bear the identifying number
of the bankruptcy petition preparer, in violation of Section
110(c)(1).  The bankruptcy petition preparer signed the petition,
schedules, and statement of financial affairs on behalf of
Debtor, in violation of Section 110(e)(1).

The employees or independent contractors working for Texas BK Firm gave Debtor legal advice, regarding Debtor's inclusion or exclusion of assets from the schedules, and bankruptcy procedures, in violation of Section 110(e)(2).

Texas BK Firm did not file a declaration disclosing fees received from Debtor within 12 months immediately prior to the case, in violation of Section 110(h)(2).[9]

Whether an entity does business under an assumed or common name is a question of fact.  Sixth RMA Partners, L.P. a/k/a RMA Partners, L.P. v. Sibley, 111 S.W.3d 46 (Tex. 2003).

In the instant case, the evidence supports a determination that Texas BK Firm is an assumed name of Robbennolt.  All of the funds provided by the clients of Texas BK Firm were deposited into a bank account controlled by Robbennolt. The employees or independent contractors who worked on cases for Texas BK Firm were hired by Robbennolt, trained by Robbennolt, and managed by Robbennolt.  Texas BK Firm utilized another attorney as attorney of record after Stowers stopped working on Texas BK Firm's cases.  Robbennolt's explanation that he undertook all these acts at the direction of Stowers is not credible.  The court concludes that Texas BK Firm is an assumed

---

[9]The court notes that Texas BK Firm's false disclosure of compensation under Bankruptcy Rule 2016(b), purporting to indicate that Stowers had agreed to accept $899 as a fee in the instant case, does not satisfy Texas BK Firm's obligation to file a declaration under Section 110(h)(2).

name of Robbennolt.

Under Section 110(l)(1), Robbennolt may be fined $500 for each failure to comply with, inter alia, Sections 110(b), (c), (e), and (h). As set forth above, Robbennolt failed to comply with Section 110(b) twice, and Sections 110(c), (e), and (h) once each. Thus, Robbennolt is liable for a fine of $2,500.[10]

As set forth above, Robbennolt and the other persons who worked on cases for Texas BK Firm violated Section 110 in several respects. Under Section 110(j), this court may enjoin them from conduct violating Section 110. The court finds that Robbennolt's conduct in violating Section 110 has been continuous and repetitive, and that an injunction against violation of Section 110 would be insufficient to deter repetition of such conduct, in light of his activities in the instant case and other cases in the Southern District of Texas, after an injunction was entered in Oklahoma enjoining him from acting as a bankruptcy petition preparer, and in light of a pattern of conduct in which similar allegations in California resulted in discipline against Dwyer and those acting in active concert or participation with

---

[10]The court notes that, under Section 110(l)(2), the court would be required to triple the fine if it found that Robbennolt advised Debtor to exclude assets from the schedules. However, because the evidence is inconclusive as to whether Robbennolt personally gave that advice, the court does not triple the fine.

Dwyer, including Robbennolt.[11]  The court concludes that

Robbennolt should be enjoined from acting as a bankruptcy

petition preparer, pursuant to Section 110(j)(2)(B).

Debt Relief Agency Issues

Section 101(12A) defines "debt relief agency," with

exclusions not pertinent to the instant case, as "any person who

provides any bankruptcy assistance to an assisted person in

return for the payment of money or other valuable consideration,

or who is a bankruptcy petition preparer under section 110."

11 U.S.C. § 101(12A).  The term "assisted person" means any

person whose debts consist primarily of consumer debts and the

value of whose nonexempt property is less than $150,000.

11 U.S.C. § 101(3).  The court concludes that Debtor was an

assisted person in the instant case, and that Texas BK Firm was a

debt relief agency.

Section 526(c)(2) provides in pertinent part that a

debt relief agency is liable to an assisted person

> in the amount of any fees or charges in connection with
> providing bankruptcy assistance to such person that
> such debt relief agency has received, for actual
> damages, and for reasonable attorneys' fees and costs
> if such agency is found, after notice and a hearing, to
> have -

---

[11]The court notes that Robbennolt's conduct appears to
violate the injunction entered by the Oklahoma court.  This court
does not address the consequences of Robbennolt's violation of
that injunction, but rather identifies the injunction as
indicative of a pattern of activity on Robbennolt's part.

* * *

> (B) provided bankruptcy assistance to an assisted
> person in a case or proceeding under this title that is
> dismissed or converted to a case under another chapter
> of this title because of such agency's intentional or
> negligent failure to file any required document
> including those specified in section 521.

11 U.S.C. § 526(c)(2).

In the instant case, although the case could have been dismissed for failure of Debtor to file a certificate indicating completion of the prepetition briefing required under Section 109(h)(1), the case actually was dismissed for failure of Debtor to file a plan.  Debtor's failure to file a plan is not attributable to Texas BK Firm.  The court concludes that relief is not available under Section 526(c)(2) in the instant case.

<u>Sanctions Issues</u>

A decision to invoke the inherent power to sanction requires a finding of bad faith or willful abuse of the judicial process.  The finding of bad faith must be supported by clear and convincing proof.  <u>In re Moore</u>, 739 F.3d 724 (5th Cir. 2014).

When a bankruptcy court imposes a disciplinary sanction it must use the least restrictive sanction necessary to deter the inappropriate behavior.  <u>In re Whitley</u>, 737 F.3d 980 (5th Cir. 2013).

The evidence in the instant case establishes a pattern of willful abuse by Texas BK Firm, in which non-attorneys created a false appearance (for both the court and the client) that the

29

work they did in preparing, signing, and filing petitions, schedules, statements of financial affairs, disclosures of compensation, and other documents, was done by, or at the direction of, an attorney.  In fact, although an attorney's name was signed to the documents, the documents were prepared without any consultation between attorney and client, and apparently without any regard, on the part of Texas BK Firm, for the legal significance of each client's particular situation.  The court concludes that Texas BK Firm should be sanctioned, based on the court's inherent power.

In the instant case, no less restrictive sanction is sufficient to deter the recurrence in other cases of the misconduct by Texas BK Firm in the instant case, than enjoining Robbennolt, and all those who acted with him, from filing documents, directly or indirectly, in this court.  Additionally, Robbennolt should be required to reimburse Debtor for his lost income in appearing at hearings on this court's orders to show cause.

### Referral Issues

The practice of law in Texas is restricted to members of the State Bar, with limited exceptions permitted by the Texas Supreme Court.  In re Nolo Press/Folk Law, Inc., 991 S.W.2d 768 (Tex. 1999).  The Unauthorized Practice of Law Committee shall, inter alia, seek the elimination of the unauthorized practice of

law by appropriate actions and methods, including the filing of suits in the name of the committee.  Tex. Gov't Code § 81.104(2).

In the instant case, the individuals associated with Texas BK Firm, including Robbennolt, appear to have engaged in the unauthorized practice of law.  The court will refer the instant matter to the Unauthorized Practice of Law Committee of the State Bar of Texas for such further action as may be necessary.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on June 10, 2014.


_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

31